PHILLIP F. CAMPBELL, APPELLEE, v. ROBERT P. PETERSON, APPELLANT.

FILED OCTOBER 18, 1919. No. 20435.

**Vendor and Purchaser:** FRAUD: RELIEF. One who in response to a material inquiry gives an equivocal and misleading answer which is intended to convey, and does convey, to an intending purchaser, to

his prejudice, a false and erroneous impression, but for which he would not have entered into a contract, is guilty of such fraud as will justify a court of equity in setting aside the contract, at the suit of the injured party.

APPEAL from the district court for Custer county: BRUNO O. H STETLER JUDGE. *Affirmed.*

*Henry Mencke, N. T. Gadd* and *Frank Dolezal,* for appellant.

*Sullivan, Squires & Johnson, contra.*

LETTON, J.

This is an action to set aside a contract for the exchange of lands upon the ground of fraud.

Plaintiff was the owner of a ranch of 1,720 acres in Custer county. The defendant owned a farm in Burt county upon the banks of the Missouri river. Early in 1916 the plaintiff wrote to one Hunter, a real estate agent, requesting him to find a purchaser for his ranch, or some one who would exchange for it land in eastern Nebraska of less value, and offering to carry the difference in value as an incumbrance upon the land. Hunter went to defendant's land, examined it, and procured defendant, Peterson, to go to Custer county and look at the plaintiff's land. A few weeks afterwards plaintiff went to Blair, where he met Hunter and one Hopewell, a lawyer and real estate agent of that place. Hopewell drove them to defendant's farm. They looked over the building, started to look at the land, when Peterson left them and requested Hunter to show the place to plaintiff. Some discussion took place as to whether there was 320 acres of the land. Plaintiff stepped from a fence, which he says was pointed out to him as being a certain distance from the west line, to the river, and convinced himself that the quantity of land was as represented. He now insists that the location of the fence was misrepresented to him, and that he was therefore misled and deceived with regard to the quantity of land. He also implies that Hunter was acting in Peterson's interest in thus deluding him.

The story of plaintiff is absolutely contradicted by defendant and his witnesses with respect to most of the material points in the case. It is clear that the plaintiff had an opportunity to fully examine the farm, as he spent the greater part of the day there; that Hunter took him over the place; that at that time the Missouri river was high and some of the land along its banks was being undermined and falling into the river. This is another point as to which plaintiff insists he was deceived. He testifies that, when he asked defendant about the river cutting the land, he was told that the river had been at that place for 18 years, and that it would be there after defendant was gone. There is no question but that defendant's farm is rich and fertile, but it appears that, instead of there being 320 acres of land, as plaintiff says was represented to him, there was in fact only about 262 acres. The value of the land for the purpose of the exchange was placed at $150 an acre, but the court found, as we think correctly, that it is not worth to exceed $100. At this figure there is a difference in value on account of the loss of acreage alone of $5,800.

A number of other allegations of fraud and misrepresentations are made in the petition, most of which were not proved. The court found: "That, in order to induce the plaintiff to enter into said contract, the defendant represented to the plaintiff and knowingly led the plaintiff to believe before and at the time of the execution of said contract that there were in the tracts that the defendant "knowingly, deceitfully and wrongfully by his manner and language caused the plaintiff to believe and to understand that the Missouri river, on the banks of which said land was situated, had not of land owned by the defendant and described in said warranty deed fully 320 acres." The court also found for a long period of time washed away any substantial portion of said land, but that the margin thereof had remained substantially permanent for a long period

of time; that for the purpose of deceiving the plaintiff the defendant then said to him, 'I have been here about 18 years and the river has always been there and is not worrying me a particle:' But the court finds from the evidence that said river had washed away large quantities of said land within recent time so that many acres thereof had fallen into the river and become worthless; that said river is constantly encroaching upon said land and carrying off great quantities thereof, all of which the defendant well knew at the time said contract was entered into, but plaintiff was ignorant thereof. And the court finds that said conduct of the defendant toward the plaintiff constitutes and is a fraud upon plaintiff, and that plaintiff was deceived thereby; and the court finds that said contract as to the plaintiff is inequitable, unconscionable, fraudulent, null and void, and ought not to be specifically enforced by a court of equity.''

The court made other findings with respect to misrepresentations as to title and as to the amount of incumbrance on the land, but we are of opinion such findings, standing alone, would not justify a decree for plaintiff. We are also convinced that, while opportunity was afforded the plaintiff to see the farm, sufficient misrepresentations of fact were made to him to justify the finding and decree of the district court.

A cross-petition was filed by the defendant, asking specific performance of the contract for the conveyance of plaintiff's land in Custer county. This was properly denied by the district court. Several of defendant's witnesses testified that, on the day plaintiff examined the farm, defendant told him that he could take the land at 320 acres, or measure it, or have it surveyed; but this testimony is considerably shaken by the fact that the witnesses do not agree as to the time and place of the alleged conversations. Upon the whole case we are satisfied that the district court reached the proper conclusion.

AFFIRMED.

Cornish, J., concurring.

I agree to the law as stated, in its application to the case in hand and to rescission cases generally. The opinion properly distinguishes the case as one in equity, asking that the parties be placed *in statu quo,* and not one where the plaintiff is seeking damages for fraudulent representations on the ground that he is entitled to the benefits of his contract as made. In the latter class of cases, the question may always arise whether, under the circumstances, the plaintiff had a right to rely upon the representation made.